IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JONI JAMES, | : CASE NO. 1:04 CV 153 |
| Plaintiff, | : |
| -vs- | : MEMORANDUM OF OPINION AND |
| | : ORDER DENYING PLAINTIFF'S |
| | : MOTION FOR CONTEMPT OF COURT |
| A.H. MARATHON, et al., | : |
| Defendants. | : |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is plaintiff Joni James' ("James") Motion for Contempt of Court against the Mayflower Manor Tenant Association ("Association") for its alleged failure to respond to the plaintiff's document request, pursuant to Fed. R. Civ. P. 45 governing non-party discovery.  (Docket No. 82).  The Court noticed all parties to the contempt matter for a show cause hearing on 14 November 2005, which was attended only by Ms. James, her counsel, Michael Wright, and the plaintiff's process server, Michael Kaus.  The Court convened the hearing to examine Ms. James' motion for contempt brought against the Association, a non-party alleged contemnor, for its failure to produce documents requested by the plaintiff – specifically, alleged minutes of the Association's meetings – in her sexual harassment suit against A.H. Marathon and Nader Abraham.

Based on the evidence adduced at the hearing and the relevant law, this Court denies Ms. James' motion for contempt of court against the Association pursuant to

<u>Electrical Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Electric Service Company</u>, 340 F.3d 373 (6th Cir. 2003) (Moving party must produce clear and convincing evidence showing the alleged contemnor violated a definite and specific order of the Court requiring it to perform a particular act).

## I. FACTUAL BACKGROUND

At the show cause hearing on 14 November 2005, the Court heard argument from counsel and testimony from Michael Kaus and Joni James regarding the events surrounding the service of subpoena on the Association. In sworn testimony before the Court, Mr. Kaus recounted serving a subpoena at the Mayflower Manor on 15 December 2004 for all minutes, agendas, reports and other documents associated with any tenant meetings from 1 January 2002 to 1 January 2003. (Pls. Exhibit 3; Tr. at 3-5). Mr. Kaus further testified that he had personally given the subpoena to an individual named Julie Barreh in an office of the Mayflower Manor. Reportedly, after Mr. Kaus was allowed entrance into the apartment complex, and after he arrived at the unmarked office, he announced he had a subpoena for the tenant association keeper of records and Ms. Barreh approached Mr. Kaus and stated, "I can take that." (Tr. at 4, 5).

With regard to serving the subpoena on the Association at Mayflower Manor, a residential property for the disabled operated by Owner's Management Company, Mr. Kaus engaged in the following colloquy with the Court:

> A. You have to buzz yourself in first, or they have to buzz you in, and when I first got there I pressed the button and I just said I was here to serve a subpoena on the tenant association, and as I had said earlier, then when I went in I had

said essentially the same thing, that I'm here to serve a subpoena on -- and I'm sure I read it off exactly as it said on the subpoena, because that's what I always do -- to the tenant association/keeper of records for Mayflower Manor.

Q. And this is when Miss Barreh appeared?

A. Yes. She was behind a desk at the time.

Q. Was there any type of signs or anything on her desk?

A. Not that I recall.

THE COURT: But this is in the Mayflower Manor, right? It's not in an office of the tenant association, is it?

THE WITNESS: I'm not sure if it was an office of the tenant association or the office of the Mayflower Manor or if it was a combined office, Your Honor.

THE COURT: Well, was there anything in there in that office that indicated that it was an office of the tenant association?

THE WITNESS: I don't remember any signage or anything like that even indicated it was an office. It was just the first open door when I walked in.

(Tr. At 6-7).

Joni James also testified as to the office where Mr. Kaus served the subpoena, engaging in the following colloquy with the Court:

Q. Could you describe that office for us, please?

A. It's the only office in the building. It's basically where rent is paid, any discrepancies that are going on -- that have gone on in the building is taken directly to that office. Any outside confrontations is directly, you know, outside the building, is taken directly to that office.

THE COURT: To somebody in the office, right?

THE WITNESS: Yes, ma'am. There's like two or three different people that are in the office that handle, like, the whole building.

THE COURT: So when you pay rent you're not paying the tenants association, are you.

3

>THE WITNESS: No. You just take it into the office.
>
>THE COURT: And when there is some dispute from the outside that you were just mentioning -- you don't take that to the tenants Association, do you.
>
>THE WITNESS: You take basically the people that are in the office, that's who kind of run the tenants -- most of the tenants that are in the Mayflower are on disability, and a lot of them have medical histories to where they need to be monitored.
>
>THE COURT: Right.
>
>THE WITNESS: And so they really -- they take everything to the office. And basically the office people go, okay, well, I'll handle that. Like when we raised our prices like you said earlier, when we joked because I worked at the store, when we would raise our prices on the cigarettes because the people raised them on us they would take that to the tenants association.
>
>THE COURT: Okay.
>
>THE WITNESS: I mean --
>
>THE COURT: But are the people who were there in that front office, are they the tenants association? Or are they management?
>
>THE WITNESS: They -- they're management but they manage the tenants. Do you know what I'm saying? There are no tenants in charge, because most of them are mental cases, most of them are on disability. I would have to say three-quarters of the amount of people that are in that building.
>
>THE COURT: Right. So the tenants association is really management.
>
>THE WITNESS: Yes, ma'am, basically.
>
>THE COURT: So it's not really a tenants association.
>
>THE WITNESS: No, ma'am.

(Tr. at 15-18)

The Association did not respond to Ms. James' document request. On 31 January 2005, Ms. James' attorney further advised the Association, by mail, of his intent to pursue action with the Court if the Association failed to produce the documents

4

requested within ten days. (Pls. Ex. 6). After receiving no response, Ms. James then motioned the Court for a finding of contempt on 8 March 2005, and provided a notice of service by mail to the Association. (Pls. Ex. 7). Finally, on 2 November 2005, the Court put on a Scheduling Order for a Show Cause Hearing Pursuant to Fed. R. Civ. P. 45(e), and sent notice through certified mail to the Mayflower Manor Tenants Association, 263 S. Main Street, Akron Ohio. (Docket No. 132, 137). The record indicates the Association has yet to respond to any of the legal notices provided in this matter.

## II. LAW AND ANALYSIS

"The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a non-party for failure to comply with a subpoena duces tecum is Rule 45(e)." Application of Sumar, 123 F.R.D. 467, 473 (S.D.N.Y.1988). According to Rule 45(e), "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Fed. R. Civ. P. 45(e). Commentary accompanying the 1991 Amendment to Rule 45(e) notes: "[B]ecause the command of the subpoena is not in fact one uttered by a judicial officer, contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney."

Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor which weighs against disclosure. See Katz v. Batavia Marine & Sporting Supplies, 984 F.2d 422, 424 (Fed. Cir. 1993); Echostar Communications Corp. v. The News Corporation Ltd., 180 F.R.D. 391, 394 (D. Colo. 1998).

As a threshold issue the Court must consider whether Julie Barreh, the individual accepting personal service of the subpoena for the Association, is actually a member or agent of the Association. The documents provided by Ms. James are silent on that issue. The testimony of Mr. Kaus and Ms. James did not provide salient direction in that regard, as it appears entirely possible from the testimony that Mr. Kaus served the subpoena upon an individual employed by the entity managing Mayflower Manor and not a member or agent of the Association.

Consequently, this matter does not pass the threshold of analysis. For without clear and convincing proof the Association was properly served, the Court cannot impose contempt sanctions on the Association. <u>Electrical Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Electric Service Company</u>, 340 F.3d at 379. Lacking a clear and convincing indication that Ms. Barreh was a member, officer or agent of the Association to effect proper service, the Court has no jurisdiction to enforce the subpoena through a contempt finding. Accordingly, Ms. James motion is denied.

### III. CONCLUSION

For the reasons discussed above, the plaintiff's Motion for Contempt of Court is denied.

IT IS SO ORDERED.

    /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Dated: <u>17 November 2005</u>